UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

VICTOR CUSTODIO, individually and    :
on behalf of all other persons
similarly situated, et al.,          :

                    Plaintiffs,      :    06 Civ. 7148 (GBD)(HBP)

        -against-                    :    REPORT AND
                                          RECOMMENDATION
AMERICAN CHAIN LINK & CONSTRUCTION,  :
INC., et al.,
                                     :
                    Defendants.
                                     :
-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

District Judge,


I.   Introduction


          By motion dated February 10, 2009, plaintiffs' counsel

seek fees and costs for their work in this matter.  For the

reasons set forth below, I respectfully recommend that plain-

tiffs' counsel be awarded $51,892.50 in attorney's fees and

$2,169.35 in costs, for a total award of $54,061.85.

II.   <u>Facts</u>

A.   <u>Background</u>

On September 18, 2006, plaintiffs Victor Custodio, Eister Delgado and Jose Banegas, on behalf of themselves and others similarly situated, brought this action against defendants American Chain Link & Construction, Inc. ("American Chain Link"), Mary Murchison, Richard Guercia, Colonial Surety Co., Nova Casualty Co., John Doe Prime Contractors 1 Through 10 and John Doe Bonding Companies 1 Through 10 (Complaint, dated Sept. 18, 2006 ("Compl.") (Docket Item 1)).  Plaintiffs commenced this action for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et seq</u>., N.Y. Labor Law § 652 and 12 N.Y.C.R.R. § 142-3.2, and for prevailing wages and supplemental benefits under New York State law (Compl. at ¶¶ 1-2).

On April 4, 2007, counsel for the parties met to discuss settlement (Affirmation of Joseph M. Labuda in Opposition to Plaintiffs' Application for Counsel Fees and Costs, dated March 27, 2009 ("Labuda Aff."), at ¶ 4).  Defendants offered a proposed settlement of $100,000 for the entire class, inclusive of attorneys' fees and costs, which plaintiffs rejected (Reply Affirmation of Delvis Melendez in Support of Motion for Attorneys Fees, dated April 4, 2009 ("Reply Aff."), at ¶ 7).

2

On August 27, 2007, plaintiffs' motion to certify class was denied without prejudice by your Honor (Order, dated March 18, 2008 (Docket Item 35)).  On May 7, 2008, defendants made an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68 of a total of $35,000 to the three plaintiffs ($5,000 to Custodio, $10,000 to Delgado and $20,000 to Banegas), and $30,000 in legal fees (Reply Aff. at ¶ 8).  Plaintiffs also rejected this offer (Reply Aff. at ¶ 8).

A Stipulation of Dismissal resolving the litigation was entered on February 23, 2009 (Docket Item 53).  The settlement agreement provided for the payment of $62,500 to plaintiffs in the following amounts:  $20,000 to Custodio, $17,500 to Delgado and $25,000 to Banegas (Labuda Aff. at ¶ 41).  The Stipulation further provided that "the Court retains jurisdiction over any application for attorney's fees by Plaintiffs' Counsel if fees cannot be resolved between the parties."

B.  Fees Sought
    by Plaintiffs

Plaintiffs' counsel seeks attorney's fees in the amount of $106,335.75 and costs in the amount of $4,169.35 in connection with their representation of plaintiffs.  Plaintiffs were repre- sented by solo practitioner Delvis Melendez as well as attorneys

from the firm of Barnes, Iaccarino, Virginia, Ambinder & Shepherd

PLLC.  Plaintiffs calculate the amount sought as follows:

| Attorney | Rate Sought | No. of Hours | Fee Sought |
|---|---|---|---|
| Lloyd Ambinder<br>Founding partner<br>with "considerable<br>experience" in labor law | $350/hour | 37.00 | $12,950.00 |
| Delvis Melendez<br>Solo practitioner with<br>more than 10 years<br>experience in the field<br>of labor and employment<br>law | $300/hour | 244.35 | $73,305.00 |
| James Murphy | $225/hour<br>$125/hour | 58.58<br>3.25 | $13,180.50<br>$406.25 |
| Judy Wong | $225/hour | 0.25 | $56.25 |
| Sumani V. Lanka | $185/hour | 19.50 | $3,607.50 |
| LaDonna Lusher | $150/hour | 0.50 | $75.00 |
| Gina Redrovan | $125/hour | 1.13 | $141.25 |
| Ashley Quinn | $100/hour | 24.19 | $2,419.00 |
| Martin Fojas | $75/hour | 2.60 | $195.00 |
| | | TOTAL | $106,335.75 |

(Declaration of Delvis Melendez, dated February 10, 2009

("Melendez Decl."), at ¶¶ 5-7 & Ex. E).

III.  Analysis

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b); see Cesario v. BNI Const., Inc., 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209 at *6 (S.D.N.Y. Dec. 15, 2008) (Gorenstein, M.J.), adopted by, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009) (Stanton, D.J.).  New York Labor Law also provides that a successful plaintiff may recover attorney's fees and costs.  N.Y. Labor L. §§ 198, 663(1).  Even where the plaintiff agrees to a settlement, he is still entitled to attorney's fees under the FLSA and NYLL.  Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

In determining the amount of reasonable attorney's fees, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  This figure was previously referred to as the "lodestar," but in Arbor Hill the Second Circuit abandoned the use of this metaphor as

5

unhelpful.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v.
County of Albany</u>, <u>supra</u>, 522 F.3d at 190; <u>see also</u> <u>Green v.
Torres</u>, 361 F.3d 96, 98 (2d Cir. 2004) (<u>per</u> <u>curiam</u>) ("'[T]he
starting point for the determination of a reasonable fee is the
calculation of the lodestar amount.'" (<u>quoting</u> <u>Hensley v.
Eckerhart</u>, <u>supra</u>, 461 U.S. at 433)); <u>Hnot v. Willis Grp. Holdings
Ltd.</u>, 01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7,
2008) (Lynch, D.J.).

          Plaintiffs originally claimed a lodestar figure of
$103,800.75.  This figure was based on 235.90 hours of legal work
provided by Melendez, who charged $300 per hour ($70,770.00),
plus 147.00 hours of legal work performed by Ambinder and his
firm, which charged various hourly rates ($33,030.75) (Melendez
Decl. at ¶¶ 6-7, 16 & Ex. E).  Melendez asks for another 8.45
hours for researching and drafting the Reply Affirmation (Reply
Aff. at 10), which brings the total time recorded to 391.35 hours
and the lodestar to $106,335.75.  Defendants challenge the
reasonableness of both the hourly rates submitted by plaintiffs'
attorneys and the total hours expended on this matter.

     A.  <u>Reasonable Hourly Rates</u>

          The hourly rates used in making a fee award should be
"what a reasonable, paying client would be willing to pay."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Cnty., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Finally, the Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation

7

> himself, whether an attorney might have initially acted
> <u>pro</u> <u>bono</u> (such that a client might be aware that the
> attorney expected low or non-existent remuneration),
> and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of</u>

<u>Albany</u>, <u>supra</u>, 522 F.3d at 184.

The United States Supreme Court recently reiterated in

<u>Perdue v. Kenny A.</u>, ___ U.S. ___, 130 S. Ct. 1662, 1669 (2010)

that "there is a strong presumption that the lodestar is suffi-

cient."  In all cases, "the fee applicant has the burden of

showing by 'satisfactory evidence -- in addition to the attor-

ney's own affidavits' -- that the requested hourly rates are the

prevailing market rates."  <u>Farbotko v. Clinton Cnty.</u>, <u>supra</u>, 433

F.3d at 209, <u>quoting</u> <u>Blum v. Stenson</u>, <u>supra</u>, 465 U.S. at 895

n.11.  In determining reasonable hourly rates, a court should

first examine the attorneys' experience.  <u>Kahlil v. Original Old</u>

<u>Homestead Rest., Inc.</u>, <u>supra</u>, 657 F. Supp. 2d at 475, <u>citing</u>

<u>Marisol A. ex rel. Forbes v. Giuliani</u>, 111 F. Supp. 2d 381, 386

(S.D.N.Y. 2000) (Ward, D.J.).

Plaintiffs only expressly describe the experience of

Delvis Melendez, who seeks an hourly rate of $300.  She has more

than 10 years of experience in employment and labor law, and she

cites several published opinions in cases on which she worked

(Melendez Decl. at ¶ 6).  The plaintiffs' memo also cites numer-

8

ous cases in which courts awarded rates ranging from $250 per hour to $430 per hour to experienced attorneys (Memorandum of Law for an Award of Attorneys Fees & Costs Pursuant to 29 U.S.C.A. 216(b), dated February 10, 2009 ("Pls.' Mem."), at 10-12).

Defendants argue that any award of any fees based on an hourly rate in excess of $250 per hour is unreasonable, citing two cases from the Eastern District of New York that approved rates at $250 per hour in FLSA cases (Defendants' Memorandum of Law in Opposition to Plaintiffs' Application for Counsel Fees and Costs, dated March 23, 2009 ("Defs.' Mem."), at 5-6, citing Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723 (E.D.N.Y. 2009); and Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202 (E.D.N.Y. 2007)).  I note that cases from the Eastern District of New York are not controlling here.  "The relevant 'community' is the district in which the case was brought, and in the Southern District of New York, Manhattan rates are considered the standard." American Cas. Co. of Reading, Pa. v. Morgan-White Underwriters, Inc., 02 Civ. 931 (WHP)(DF), 2003 WL 23374768 at *10 (S.D.N.Y. 2003) (Freeman, M.J.) (Report and Recommendation), citing S.W. ex rel. N.W. v. Bd. of Educ., 257 F. Supp. 2d 600, 603-04 (S.D.N.Y. 2003) (Scheindlin, D.J.); and Knoeffler v. Town of Mamakating, 126 F. Supp. 2d 305, 313 (S.D.N.Y. 2000) (Conner, D.J.).  In Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d

Cir. 2009), the Second Circuit noted that "the prevailing hourly rates are substantially lower" in the Eastern District than in the Southern District.

In Marisol A. v. Giuliani, supra, 111 F. Supp. 2d at 386, a case that is now more than 10 years old, the court found a rate of $300 per hour reasonable for an attorney with between 10 to 15 years of experience in this district. See also Torres v. City of New York, 07 Civ. 3473 (GEL), 2008 WL 419306 at *1 (S.D.N.Y. Feb. 14, 2008) (Lynch, D.J.) ("The rate of $350 is not unreasonable for a lawyer of ten years' experience."). More recently, the Honorable Andrew J. Peck, United States Magistrate Judge, found rates of $300 per hour and $275 per hour for 2007 law school graduates to be reasonable in an FLSA and NYLL case. Allende v. Unitech Design, Inc., 10 Civ. 4256 (AJP), 2011 WL 891445 at *3-*4 (S.D.N.Y. Mar. 15, 2011) (Peck, M.J.) (collecting cases); see also Wong v. Hunda Glass Corp., 09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) (Ellis, M.J.) ("[T]he range of fees in this District for civil rights and employment law litigators with approximately ten years' experi-ence is between $250 per hour and $350 per hour." (citations omitted)); Heng Chan v. Sung Yue Tung Corp., 03 Civ. 6048 (GEL), 2007 WL 1373118 at *4 (S.D.N.Y. May 8, 2007) (Lynch, D.J.) (awarding attorney with 15 years' experience $400 per hour and

sixth-year associate $300 per hour).  Accordingly, I find
Melendez's rate of $300 per hour to be consistent with the
prevailing rates in this district, and, therefore, reasonable.

Ambinder seeks an hourly rate of $350.  The Melendez
Declaration describes him as "a founding partner of a New York
City Law firm known by the name of Barnes, Iaccarino, Virgina
[sic], Ambinder & Shepard PLLC" (Melendez Decl. at ¶ 7).
Melendez further describes Ambinder and the attorneys at his firm
as "experienced commercial litigators who have successfully
represented classes in numerous class actions and have consider-
able experience in Labor law cases" (Melendez Decl. at ¶ 7).
Additionally, Melendez cites a number of state and federal cases
on which Ambinder and/or his firm had worked.  I conclude that
these descriptions, combined with the citation of decisions that
are more than 10 years old (see Melendez Decl. at ¶ 7, citing
Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999)
(Chin, D.J.)), are sufficient for me to evaluate his qualifica-
tions.  As already addressed, "the range of fees in this District
for civil rights and employment law litigators with approximately
ten years' experience is between $250 per hour and $350 per
hour." Wong v. Hunda Glass Corp., supra, 2010 WL 3452417 at *3
(citation omitted); Torres v. City of New York, supra, 2008 WL
419306 at *1.  I conclude that Ambinder's rate of $350 per hour

11

is in line with the district's prevailing rates and, therefore, reasonable.

However, the other attorneys and paralegals who worked on this matter are never mentioned by name in either the Melendez Declaration or the memo in support of fees.  Their names are mentioned only in an "Attorney Summary" on the billing records of Ambinder's firm (Ex. E, annexed to Melendez Decl., at 4).  No resumes or curricula vitae were provided.  Judges in this district have routinely denied requests for attorney's fees where applications were not properly supported by information on attorneys' qualifications and experience.  Cruz v. U.S. Health Clean, 07 Civ. 6392 (LTS)(KNF), 2009 WL 1562749 at *7 (S.D.N.Y. May 29, 2009) (Fox, M.J.) (Report and Recommendation), adopted in part by, 2010 WL 605583 (S.D.N.Y. Feb. 19, 2010) (Swain, D.J.); Access 4 All, Inc. v. Park Lane Hotel, Inc., 04 Civ. 7174 (SAS)(JCF), 2005 WL 3338555 at *4 (S.D.N.Y. Dec. 7, 2005) (Francis, M.J.).

Because the individual qualifications of the other attorneys at Ambinder's firm have not been disclosed, I recommend that their application for fees be rejected.  The court should not be forced to scour the Internet for attorney profiles of unknown origin and unknown accuracy because fee applicants failed to attach resumes or give any information setting forth their

12

qualifications.  As noted above, "the fee applicant has the
burden of showing by 'satisfactory evidence -- in addition to the
attorney's own affidavits' -- that the requested hourly rates are
the prevailing market rates."  Farbotko v. Clinton Cnty., supra,
433 F.3d at 209, quoting Blum v. Stenson, supra, 465 U.S. at 895
n.11.

          In a recent case involving the same law firm here --
Barnes, Iaccarino, Virginia, Ambinder & Shepherd PLLC --
the Honorable Kevin N. Fox, United States Magistrate Judge,
recommended that the attorneys' request for fees be denied where
counsel failed to "(a) provide the names of the personnel who
performed the work, (b) distinguish the position held by each
individual, e.g. partner, associate, paralegal, etc., and (c)
describe the experience and qualifications of the individuals who
worked on this matter."  Cruz v. U.S. Health Clean, supra, 2009
WL 1562749 at *7.  Given such a deficient submission, "the Court
[was] unable to evaluate whether the hourly rates for the legal
services rendered are reasonable."  Cruz v. U.S. Health Clean,
supra, 2009 WL 1562749 at *7 (citation omitted).  In reviewing
that Report and Recommendation, the Honorable Laura Taylor Swain,
United States District Judge, reiterated that "disallowance of
attorney's fees is permissible if the application is inadequately
supported" and stated that "[t]he Report's conclusion appears

13

correct based on the information available to Judge Fox." Cruz
v. U.S. Health Clean, supra, 2010 WL 605583 at *2.  However, the
plaintiffs there subsequently supplied the court the previously
absent information, and Judge Swain awarded attorney's fees.
Cruz v. U.S. Health Clean, supra, 2010 WL 605583 at *2.

I agree with Judge Fox's analysis, and I adopt his
reasoning here.  While the plaintiffs here provide names of
personnel in an attached exhibit, they otherwise make no mention
of them.  They similarly fail to distinguish their positions and
fail to describe their qualifications in anything other than
broad terms.  Therefore, I recommend that the application for all
fees, other than those of Melendez and Ambinder, be rejected.

With respect to paralegals, I would normally recommend
a reduction of their rates due to lack of proper documentation.
See Yea Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560 (GBD)(GWG),
2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.)
(adopting Report and Recommendation) ("[B]ecause we have been
given no information whatsoever as to their experience and
expertise, we will instead award an hourly rate of $50."};
Tlacoapa v. Carregal, 02 Civ. 4671 (SCR), 386 F. Supp. 2d 362,
370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing requested rate of
$125 per hour to $75 per hour where plaintiff failed to submit
information about paralegal's experience).  However, the three

14

individuals I suspect may be paralegals -- Redrovan, Quinn and
Fojas -- are listed only under the same "Attorney Summary" in the
billing records of Ambinder's firm and are, therefore, grouped
with the attorneys (Ex. E, annexed to Melendez Decl., at 4).
Because of plaintiffs' failure to differentiate between
paralegals and attorneys, I reject all paralegals' applications
for fees as well.  It is not the court's role to guess who may be
a paralegal instead of an attorney.  I recommend that these fees
should not be recoverable in the absence of an express designa-
tion.

    B.  Reasonable
        Number of Hours

        The party seeking attorney's fees also bears the burden
of establishing that the number of hours for which compensation
is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd.
of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing
Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevo-
lent Ass'n of City of N.Y. v. City of N.Y., 97 Civ. 7895 (SAS),
98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31,
2003) (Scheindlin, D.J.).  In applying for fees and costs, "any
attorney . . . must document the application with contemporaneous
time records.  These records should specify, for each attorney,

15

the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc., 06 Civ. 7827 (HB)(GWG), 2008 WL 4449533 at *6 (S.D.N.Y. Oct. 2, 2008) (Baer, D.J.) (adopting Report and Recommendation) (fee request submission must "indicate that it is based on contemporaneous time records" (collecting cases)). Transcriptions of contemporaneous time records containing the above information have been found to satisfy this requirement. See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160 (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.).

I conclude that the records submitted are contemporaneous. Defendants do not dispute this issue, and plaintiffs have provided computer-generated time sheets where time was entered "directly onto the computer, on the same day, or within one or two days after the services [were] rendered" (Melendez Decl. at ¶ 17 & Ex. E).

16

Defendants seek reductions of plaintiffs' fees on the following grounds:  (1) plaintiffs needlessly prolonged litigation; (2) plaintiffs harassed defendants and engaged in improper litigation practices; (3) recovery is not available for time spent on unsuccessful motions; (4) the prevailing wage claims are not intertwined with the FLSA claims; (5) the hours submitted are excessive and duplicative; (6) the time entries are vague and incomplete; (7) some attorneys should not be reimbursed for their minimal contributions, and (8) plaintiffs' limited success requires a more proportional award of fees (see Defs.' Mem.).

     1.  Protraction
         of Litigation

Defendants initially argue that plaintiffs are not entitled to any attorney's fees because plaintiffs unnecessarily increased the hours expended and never provided defendants their Rule 26(a)(1) disclosures, thereby delaying settlement through a failure to provide damages calculations (Defs.' Mem. at 3-4). Defendants cite one case, Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241 (11th Cir. 2009), in support of their argument.  However, Sahyers is inapposite, because its holding is not based on either of the grounds defendants raise here.  Moreover, another case cited by defendants in support of its argument that

fees should at least be reduced, <u>Jankey v. Poop Deck</u>, 537 F.3d
1122, 1132 (9th Cir. 2008), stated that "unreasonably prolonging
a legitimate suit is a reason to reduce fees, <u>not to deny them
altogether</u>" (emphasis added).  Therefore, I decline to recommend
a denial of all attorney's fees.

I also decline to recommend a reduction of fees on
these grounds.  Defendants argue that plaintiffs needlessly
prolonged the litigation by not accepting an offer of $100,000,
inclusive of attorney's fees, in April 2007.  This argument
misses the mark.  Plaintiffs explain that the April 2007 $100,000
settlement offer was a proposed settlement for the entire class,
and that distributions from that pool of money would be made to
those responding to the Notice of Pendency (Reply Aff. at ¶ 7).
Plaintiffs did not know how many class members would seek to
participate in that settlement and thought it "unethical" to make
such an agreement (Reply Aff. at ¶ 7).  After the Court denied
plaintiffs' motion for class certification without prejudice,
defendants made a Rule 68 Offer of Judgment in May 2008 of a
combined $35,000 to the three plaintiffs and $30,000 in legal
fees (Reply Aff. at ¶ 8).  The parties later settled in January
2009 for $62,500, exclusive of attorney's fees (Docket Item 53;
Labuda Aff. at ¶ 41).  Because this settlement was substantially
more lucrative than the Rule 68 Offer, I conclude that plaintiffs

did not needlessly prolong the litigation.  Therefore, I find no
reason to either deny or reduce fees on this basis.

Additionally, defendants claim that they "<u>never</u>"
received complete initial disclosures, in violation of
Fed.R.Civ.P. 26(a)(1) and a court order (Defs.' Mem. at 18).  On
September 15, 2008, the Honorable Douglas F. Eaton, United States
Magistrate Judge, ordered that "each of the three plaintiffs must
serve complete initial disclosures by September 19, 2008, in full
compliance with the first three subdivisions of Rule 26(a)(1)(A),
including a separate computation for each plaintiff of each
category of damages claimed by him, and a copy of the documents
on which each computation is based" (Order, dated September 15,
2008 (Docket Item 49), at 1 (emphasis removed)).  Defendants
acknowledge that they received an email from plaintiffs on
September 25, 2008, containing three spreadsheets for each of the
plaintiffs revealing the basis of their claims and compiling the
alleged shortfall in payments (Defs.' Mem. at 18).  Defendants,
however, contest the adequacy of the submission and the compe-
tency of the calculations (Defs.' Mem. at 18-19).

Under Fed.R.Civ.P. 37(c)(1), "[i]f a party fails to
provide information . . . as required by Rule 26(a) . . . . the
court, on motion and after giving an opportunity to be heard
. . . may order payment of the reasonable expenses, including

19

attorney's fees . . . and . . . may impose other appropriate
sanctions . . . ." Fed.R.Civ.P. 37(c)(1); Oceans Cuisine, Ltd.
v. Fishery Prods. Int'l, Inc., 05-CV-3613 (DRH)(AKT), 2006 WL
1071578 at *5-*6 (E.D.N.Y. Apr. 21, 2006).  "[E]ven under Rule
37, the imposition of sanctions for abuse of discovery . . . is a
matter within the discretion of the trial court." CP Solutions
PTE, Ltd. v. General Elec. Co., No. 3:04cv2150 (JBA)(WIG), 2006
WL 1272615 at *2 (D. Conn. Feb. 6, 2006), quoting Newman v. GHS
Osteopathic, Inc., Parkview Hosp. Div., 60 F.3d 153, 156 (3d Cir.
1995); accord Lorme v. Delta Air Lines, Inc., 251 F. App'x 691,
692 (2d Cir. 2007).  While "district courts often award attor-
ney's fees pursuant to Rule 37(c)(1) on the basis of a party's
violation of Rule 26," Virgin Enters. Ltd. v. Am. Longevity, 99
Civ. 9854 (CSH), 2001 WL 789299 at *2 (S.D.N.Y. July 11, 2001)
(Haight, D.J.) (citation omitted), defendants do not cite -- and
my research fails to uncover -- any cases in which courts denied
attorney's fees to a prevailing plaintiff in an FLSA case due to
that party's failure to comply with a discovery order.  In the
exercise of my discretion, I will neither deny attorney's fees
nor reduce them on this basis.[1]

---

[1]Although I was inclined to strike all hours worked between
September 19 and September 25, 2008, in preparing the
spreadsheets as a sanction for failing to comply with Judge
Eaton's Order, no time was submitted for this period.

Defendants also argue that plaintiffs' calculations on the spreadsheets were "incompetent" and "incorrect" (Defs.' Mem. at 19).  They contend that but-for plaintiffs' "incompetence," a settlement would have occurred sooner.  For example, Plaintiffs' calculations alleged that Custodio was owed $176,886.39 (Defs.' Mem. at 19).  However, a number of factors led to the length of the litigation, and I decline to single out an erroneous damages calculation as the principal factor contributing to delay. Although plaintiffs conceded the error (Reply Aff. at ¶ 17), neither defendants' submissions nor my own research has uncovered any case in which a court reduced attorney's fees on the basis of an erroneous damages calculation.  Therefore, I decline to recommend any reduction on this ground.

2.   Reduction for
     "Harassment"

Next, defendants argue that plaintiffs' fees should be reduced because plaintiffs "have engaged in harassment and improper, shoddy and dilatory litigation practices" (Defs.' Mem. at 15).  Specifically, defendants claim that plaintiffs: (1) harassed employees of American Chain Link throughout the course of the action by informing them that the owner could not

pay them, and (2) improperly solicited employees on two occasions to join the action (Defs.' Mem. at 15-17).

Plaintiffs deny defendants' first contention and claim that defendants "engaged in tactical motion practice based on falsehoods and perjured statements" (Reply Aff. at ¶ 18). Although this matter has settled, both parties remain rancorous. I recommend that fees not be reduced simply for the reason that the parties disagreed concerning the facts.

Next, defendants argue that Melendez should not earn fees based on time spent defending what they claim was her improper client solicitation. Defendants sought sanctions against Melendez in 2007, when they claimed she improperly solicited former American Chain Link employee Lundy Hemmings (Defs.' Mem. at 16). They wish to strike nine hours of the time Melendez spent opposing their motion for sanctions. Additionally, defendants claim Melendez improperly solicited former American Chain Link employee Rafael Abrego in August 2008. Defendants sought to disqualify her on that basis, and they wish to strike the 36 hours of time she spent opposing the motion for disqualification (see Defs.' Mem. at 16-17). I decline to recommend a reduction of these hours. First, defendants' motion for sanctions was denied without prejudice on July 26, 2007, according to the Minute Entry in the Docket Sheet. Therefore, I

conclude that Melendez should be compensated in opposing this motion.  Second, the motion for disqualification was terminated upon settlement, according to the Docket Sheet.  By now asking me to strike Melendez's hours, defendants are necessarily asking me to resolve whether Melendez improperly solicited another em-ployee.  I will not accept this invitation to resolve a moot issue.

### 3.  <u>Limited Success</u>

Defendants next argue that plaintiffs should not be entitled to reimbursement for their unsuccessful motions to compel discovery and for class certification.  I agree, and I recommend that reductions for these unsuccessful motions be made.

Defendants contend that plaintiffs' motion to compel discovery in April 2008 was "frivolous" (<u>see</u> Defs.' Mem. at 17-18).  In January 2007, plaintiffs served defendants with a demand for payroll records for all American Chain Link employees from 2000 to 2006.  Plaintiffs also requested information concerning all of American Chain Link's public works projects over the same period, regardless of who worked on those projects (Order, dated September 15, 2008, at 2).  Defendants only produced information regarding the three plaintiffs, and class certification was subsequently denied in August 2007 (Order, dated September 15,

2008, at 2).  Plaintiffs filed a motion to compel defendants to provide all of the information in April 2008; defendants now contend that this motion was frivolous.

In his September 15, 2008 Order, Judge Eaton denied the discovery plaintiffs sought (Order at 2).  Because the court ruled against plaintiffs on this issue, I recommend that compensation not be awarded for the hours spent working on this motion.  Maddalone v. United Bhd. of Carpenters, 95 Civ. 2112 (JSM), 1999 WL 269913 at *1 (S.D.N.Y. May 4, 1999) (Martin, D.J.) (applying percentage deduction "to reflect the time spent on unsuccessful arguments"); accord Spalluto v. Trump Int'l Hotel & Tower, 04 Civ. 7497 (RJS)(HBP), 2008 WL 4525372 at *10 (S.D.N.Y. Oct. 2, 2008) (Sullivan, D.J.) (adopting Report and Recommendation) (deducting time spent on unsuccessful standing argument).

However, I do not agree with the amount of the reduction proposed.  At various places in their submissions, defendants claim plaintiffs either spent 17.58 hours, "nearly ten hours" or 20.5 hours working on this motion (compare Defs.' Mem. at 9, with Defs.' Mem. at 18, with Attachment A, annexed to Letter From Joseph M. Labuda, dated March 27, 2009).  In reviewing these inconsistent figures as well as plaintiffs' time records themselves, I conclude that Melendez spent:  (1) 30 minutes on March 21, 2007, regarding a "failure to produce

24

documents;" (2) 6 hours, 20 minutes on February 1, 2008, regard-
ing a supplemental demand for documents; (3) 15 minutes on
February 2, 2008, regarding a second demand for documents, and
(4) part of the 7 hours, 30 minutes she recorded on April 6,
2008, on a letter sent to your Honor regarding discovery (Ex. E,
annexed to Melendez Decl.).  Because it is unclear whether the
April 6, 2008, entry is a block-billed entry and because of
defendants' own inconsistent figures, I recommend that a total of
12 hours be deducted from Melendez's time for the unsuccessful
discovery motion.

Additionally, defendants claim that plaintiffs spent
either 95.76 hours or 94.66 hours on the unsuccessful motion for
class certification (compare Defs.' Mem. at 9, with Attachment A,
annexed to Letter From Joseph M. Labuda, dated March 27, 2009).
In Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 151-53
(2d Cir. 2008), the Second Circuit held that the trial court did
not err in reducing the lodestar figure by fifty percent to
eliminate the time allocable to an unsuccessful motion to certify
an FLSA collective action.  The Second Circuit concluded that
"[i]n this respect the district court got it exactly right:  the
reasonableness of the attorney's fees incurred linked directly to
the ability to maintain the case as an FLSA collective action."
Barfield v. N.Y.C. Health & Hosps. Corp., supra, 537 F.3d at 153.

Here, similar circumstances warrant a similar reduc-
tion.  In reviewing the time records of Melendez and Ambinder, I
conclude that Melendez spent 25.75 hours on class certification,
calculated as follows:  20 minutes on October 15, 2006; 30
minutes on December 26, 2006; 20 minutes on January 3, 2007;
three hours, 30 minutes on May 17, 2007; seven hours, 20 minutes
on June 21, 2007; three hours, 15 minutes on June 24, 2007; eight
hours on August 15, 2007, and two hours, 30 minutes on August 27,
2007).  I conclude that Ambinder spent 16.4 hours on class
certification as follows:  6.9 hours on May 21, 2007; 5.3 hours
on May 24, 2007, and 4.2 hours on August 27, 2007.[2]  I recommend
that these hours be deducted from the attorneys' time for the
unsuccessful class certification motion.

        4.  Prevailing Wage Claims

Next, defendants argue that plaintiffs should not
recover any fees for work on the prevailing wage claims.  Defen-
dants contend that while the FLSA provides for attorney's fees
pursuant to 29 U.S.C. § 216(b), the contracts that give rise to

------------------

[2]These totals for both attorneys include block-billed
entries for which I assume -- in the absence of further clarity
by the fee applicants -- that the entire time was spent with
respect to class certification.

the prevailing wage claim did not clearly provide for counsel fees as required under New York law (Defs.' Mem. at 11, quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20-21 (2d Cir. 1996) ("Under New York law, the intent to provide for counsel fees as damages for breach of contract must be 'unmistakably clear' in the language of the contract." (citation omitted)).

Plaintiffs respond that courts "routinely award legal fees on claims that are intertwined" and that the facts and legal theories are interrelated here (Reply Aff. at ¶ 5, citing Hensley v. Eckerhart, supra, 461 U.S. at 438-40).  Defendants contend that Melendez represented during a September 12, 2008, telephone conference with Judge Eaton that Custodio's claims were essentially limited to unpaid overtime while the claims of Delgado and Banegas were essentially limited to unpaid prevailing wages, implying that plaintiffs conceded that these claims are unrelated (Defs.' Mem. at 13).  Neither party has provided a transcript of that call.

In Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 356-57 (E.D.N.Y. 2007), the court addressed the "interesting issue" of whether the overtime provisions of the FLSA protected plaintiffs who were not properly paid prevailing wages under New York State law.  Specifically, the issue in Sobczak was whether

27

plaintiffs' overtime pay should be calculated as one and a one-half times the minimum wage or one and one-half times the prevailing wage.  The Honorable Brian M. Cogan, United States District Judge, denied defendants' motion to dismiss the FLSA claims, holding that

> I see no reason why plaintiffs' claim should fail under the FLSA. . . .  the Court does not see how the employer can avoid its FLSA obligations by <u>breaching</u> its contract.  It is true that plaintiffs must first prove their entitlement to prevailing wages under state law as a predicate for an FLSA recovery, but that is just a substantive element of proof; its necessity does not eliminate FLSA liability.
> . . .
> [T]o deny plaintiffs' theory would allow an employer to circumvent the FLSA simply by breaching the base wage provisions of the contract and paying overtime on the improperly reduced base wage; under defendants' theory, the employer would have no liability because it will have paid overtime based on the artificial 'regular rate.'

<u>Sobczak v. AWL Indus., Inc.</u>, <u>supra</u>, 540 F. Supp. 2d at 361.

I agree with Judge Cogan's analysis, and I adopt his reasoning here.  I conclude that the issue of prevailing wages under New York State law and overtime under the FLSA were intertwined.  Plaintiffs cite <u>Sobczak v. AWL Indus., Inc.</u>, <u>supra</u>, and I credit their contention that they were pursuing this theory of recovery.  They claim that they "were misclassified as Laborers when they in fact worked as Ornamental Iron Workers on State funded public works projects" (Pls.' Mem. at 7).  They state that

> In order to meet their burden of proof, Plaintiffs were
> first required to prove their entitlement to the pre-
> vailing wage of an Ornamental Iron Worker pursuant to
> the state contracts. . . .  Plaintiffs would need to
> prove that defendants misclassified them as Laborers,
> compensating them at a lower base rate then [sic]
> mandated by the contract . . . . Thereafter, plaintiffs
> would be required to prove the actual hours dedicated
> to those projects, and pay received in order to estab-
> lish the FLSA underpayment, if any, arising from the
> misclassification.

(Pls.' Mem. at 8).[3]

Here, defendants settled with all three plaintiffs on all underlying claims, rather than settling only with the one plaintiff whom they implied had the only FLSA claim.  This litigation involved "a common core of facts" and was "based on related legal theories," and "counsel's time [was] devoted generally to the litigation as a whole."  Hensley v. Eckerhart, supra, 461 U.S. at 435.  Therefore, I recommend that the hours submitted with respect to the prevailing wage claims be reim-bursed.

---

[3]The decision in Grochowski v. Ajet Const. Corp., 97 Civ. 6269 (NRB), 2002 WL 465272 (S.D.N.Y. Mar. 27, 2002) (Buchwald, D.J.) does not compel a different result. There, the Honorable Naomi Reice Buchwald, United States District Judge, "stressed that the overtime claims under FLSA that were tried were totally distinct from claims for prevailing wages sought under dismissed claims brought under the other statutes." Grochowski v. Ajet Const. Corp., supra, 2002 WL 465272 at *4.  However, because the recitation of facts in that decision is truncated, it is difficult to understand the holding.

5.   Excessive and
     Duplicative Entries

Next, defendants argue that the court should reduce
plaintiffs' hours because certain billed time was excessive in
relation to the tasks performed or was duplicative (Defs.' Mem.
at 7, 9).  I agree that some time charges do appear excessive.

Defendants contend that the 5.3 hours Melendez recorded
for responding to seven interrogatories should be reduced by five
hours, and the 6.4 hours it took her to respond to 17 supplemen-
tal document demands should be reduced by at least five hours
(Defs.' Mem. at 7).  After a review of the records of Melendez
and Ambinder, I found similar instances of excessive billing in
the remainder of the invoice, and I recommend an across-the-board
reduction of ten percent.  "If a court finds that the fee appli-
cant's claim is excessive, or that time spent was wasteful or
duplicative, it may decrease or disallow certain hours or, where
the application for fees is voluminous, order an across-the-board
percentage reduction in compensable hours."  Santa Fe Natural
Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP),
2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002) (Preska, D.J.),
citing In re "Agent Orange" Prod. Liab. Litig., supra, 818 F.2d
at 237; see also Rahman v. Smith & Wollensky Rest. Grp., Inc., 06
Civ. 6198 (LAK)(JCF), 2008 WL 1899938 at *4 (S.D.N.Y. Apr. 29,

2008) (Francis, M.J.) (applying thirty-three percent reduction where time entries reflected "excessive billing or duplicative work"); Winkler v. Metro. Life Ins. Co., 03 Civ. 9656 (SAS), 2006 WL 2347826 at *2 (S.D.N.Y. Aug. 10, 2006) (Scheindlin, D.J.) (imposing twenty percent reduction for "excessive charges and lack of delegation"); Rosso v. Pi Mgmt. Assocs., L.L.C., 02 Civ. 1702 (KNF), 2006 WL 1227671 at *4 (S.D.N.Y. May 3, 2006) (Fox, M.J.) (applying fifteen percent reduction for excessive billing and vague time entries).

Defendants also claim that redundant time entries between Melendez and attorneys at Ambinder's firm should be reduced.  To the extent there are double billings, I do not believe this warrants a reduction.  In New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1146, the Second Circuit stated that

> a trial judge may decline to compensate hours spent by
> collaborating lawyers or may limit the hours allowed
> for specific tasks, but for the most part such deci-
> sions are best made by the district court on the basis
> of its own assessment of what is appropriate for the
> scope and complexity of the particular litigation.

Because I am disallowing fees with respect to all attorneys who submitted applications except Melendez and Ambinder, the only material redundancy I am concerned with is between those two attorneys.  First, I conclude that the joint

31

representation was not inappropriate for this litigation, particularly since plaintiffs spoke little or no English (Reply Aff. at ¶ 15).  Second, I have found only four entries in which both attorneys submitted time on the same day -- January 4, 2007, April 4, 2007, August 27, 2007, and August 26, 2008.  On January 4, 2007, both attorneys submitted time for attending a conference before your Honor.  On April 4, 2007, both attorneys attended a settlement conference at the office of defendants' counsel.  I find no fault in having more than one attorney attend meetings or court conferences.  On August 27, 2007, both attorneys attended a class certification conference, but that time has already be disallowed on the basis that the class certification motion was unsuccessful.

On August 26, 2008, Melendez seeks compensation for six hours, 45 minutes for reading defendants' motion to disqualify counsel and drafting an attorney affirmation in response, while Ambinder spent 0.9 of an hour for a conference with Melendez and "[a]ttention to file" regarding defendants' motion to disqualify counsel.  I find Ambinder's minimal time on this date entirely reasonable.  While Melendez drafted the affidavit opposing disqualification, Ambinder merely communicated with her and apparently prepared a memo for his own behalf.  I find no fault in plaintiffs' submitting both entries for reimbursement.

Therefore, I decline to recommend a reduction on the basis of duplicative entries.

### 6.  Vague Entries

Next, defendants argue that all time records that are "vague or incomplete" should be reduced (Defs.' Mem. at 7-8).  I agree that some time charges are too vague.

Melendez's records contain numerous cryptic descriptions.  For example, an entry dated June 22, 2006, describes part of the services rendered that day as "[r]esearch law," without any further description as to what law or laws were researched (Ex. E, attached to Melendez Decl.).  On June 29, 2006, an entry reads, in part, "Review records" (Ex. E, attached to Melendez Decl.).  Also, one entry in April 2007 is missing the date of Melendez's work (Ex. E, attached to Melendez Decl.).  Courts have routinely found similarly vague descriptions to be deficient.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172-73 (2d Cir. 1998) (upholding twenty percent reduction in billed time for vagueness and other deficiencies where many time entries merely read "letter to court," "staff conference," and "work on motion"); United States Football League v. National Football League, 887 F.2d 408, 415 (2d Cir. 1989) (approving a ten percent reduction of total fee award to account for vagueness

33

in documentation of certain time entries); <u>Tucker v. Mukasey</u>, 03 Civ. 3106 (LTS)(FM), 2008 WL 2544504 at *1-*2 (S.D.N.Y. June 20, 2008) (Swain, D.J.) (applying percentage reduction in hours billed on basis of vagueness because entries "fail[ed] to describe adequately the nature of the calls, the contents of the reports or documents, or the topics of the discussions"); <u>Marisol A. ex rel. Forbes v. Giuliani</u>, <u>supra</u>, 111 F. Supp. 2d at 396-97 & n.10 (concluding that "some of the time entries are so vague that the Court is unable to determine whether the time was reasonably expended").

The vague nature of Melendez's time entries is exacerbated by her use of block billing.  "While not prohibited, block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." <u>Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG</u>, 04 Civ. 3600 (SWK), 2005 WL 3099592 at *5 (S.D.N.Y. Nov. 17, 2005) (Kram, D.J.) (citation and internal quotation marks omitted).  Here, Melendez's time entries reflect frequent use of block billing (<u>see</u>, <u>e</u>.<u>g</u>., Melendez Invoice at July 25, 2006 entry, August 2, 2006 entry, August 24, 2006 entry, April 6, 2008 entry).  The same deficiency affects

Ambinder's recorded time (see, e.g., Ambinder Invoice at 9/14/2006 Entry, 1/2/2007 Entry, 3/5/2007 Entry).

The block-billed entries on these invoices make it nearly impossible to assess the reasonableness of the hours billed, particularly when coupled with the vague descriptions of individual tasks as described above.  The following entry, for which Melendez billed 2.0 hours, illustrates the problem:

> client intake Jose Banegas Eister Delgado Rigoberto
> Perez
> review documents
> Research law
> releases to get pay check.
> Speak to Milman

(Melendez Invoice at June 22, 2006 entry).

From this description, it is impossible to ascertain how much time was allocated to each of the constituent tasks described in the entry.  While the use of block billing does not automatically compel an across-the-board reduction, Hnot v. Willis Grp. Holdings Ltd., supra, 2008 WL 1166309 at *6, the difficulty created by Melendez's and Ambinder's substantial use of block billing in this case warrants such a reduction. Alexander v. Amchem Prods., Inc., 07 Civ. 6441 (RJS), 2008 WL 1700157 at *8 n.9 (S.D.N.Y. Apr. 3, 2008) (Sullivan, D.J.); see also Bank v. Ho Seo, 06 Civ. 15445 (LTS)(RLE), 2009 WL 5341672 at *6 (S.D.N.Y. Dec. 16, 2009) (Ellis, M.J.) (Report and

35

Recommendation), adopted as modified by, 2010 WL 129681 (S.D.N.Y. Jan. 13, 2010) (Swain, D.J.) (reducing fees by thirty percent due to vagueness and block billing, among other things); Molefi v. Oppenheimer Trust, 03 CV 5631 (FB)(VVP), 2007 WL 538547 at *7-*8 (E.D.N.Y. Feb. 15, 2007) (applying fifteen percent reduction for block billing and excessive billing); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 332 (W.D.N.Y. 2006) (reducing ten percent of hours billed because of vagueness and block billing); Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc., 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003) (Marrero, D.J.) (applying fifteen percent reduction for block billing and excessive time entries). Accordingly, I recommend that Melendez's and Ambinder's hours be reduced by fifteen percent to account for the substantial use of block billing and/or vague time entries.

Defendants argue that "the Court should disallow any and all attorneys' fees in connection with time entries by Plaintiffs, for which Defendants had requested documentation" (Defs.' Mem. at 8-9). Defendants state that they tried to resolve confusion with respect to what they deemed vague or incomplete entries by Melendez by requesting the related non-privileged documents in connection with the time recorded. They contend Melendez refused to provide any documents (Defs.' Mem. at 8). Defendants' argument is without merit because the prevailing

party's responsibility in submitting proper time records and documentation is to the court, not to an opposing party.  Cf. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160 (citation omitted); New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148. Therefore, I do not recommend an additional reduction.

### 7.  De Minimis Contributions

Defendants also argue that plaintiffs should not recover for the de minimis work done by five attorneys or paralegals:  Wong, Redrovan, Murphy, Lusher and Fojas (Defs.' Mem. at 10).  Because I have recommended that these individuals' hours be stricken for failing to disclose their individual qualifications, this argument is moot.

### 8.  Proportionality

Finally, defendants argue that the amount of fees should be reduced "to be more proportional" because plaintiffs achieved limited success in this case (Defs.' Mem. at 19-20). Although the total settlement amount was $62,500, plaintiffs have asked for $106,335.75 in fees.  Defendants concede that there is no proportionality rule per se.  "[T]he courts have consistently held that an attorneys' fee award should not be reduced to

achieve proportionality with the amount of the recovery."  Ayres
v. 127 Rest. Corp., 96 Civ. 1255 (DC), 1999 WL 328348 at *2
(S.D.N.Y. May 21, 1999) (Chin, D.J.), citing City of Riverside v.
Rivera, 477 U.S. 561, 575 (1986); and Quaratino v. Tiffany & Co.,
166 F.3d 422, 426 (2d Cir. 1999); see also Kassim v. City of
Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have
repeatedly rejected the notion that a fee may be reduced merely
because the fee would be disproportionate to the financial
interest at stake in the litigation.").  Therefore, I decline to
recommend a reduction on the grounds of proportionality.

    9.  Summary

        In conclusion, I have reduced the number of hours as
follows:  (1) a 12-hour reduction in Melendez's time for her
unsuccessful motion to compel discovery; (2) a 25.75-hour
reduction in Melendez's time and a 16.40-hour reduction in
Ambinder's time for failure to secure class certification; (3) a
10 percent reduction in Melendez's and Ambinder's time for
excessive time entries, and (4) a 15 percent reduction in
Melendez's and Ambinder's time for vague entries and/or
substantial block-billing.  These reductions yield the following
fee:

Melendez:  244.35 hours minus 37.75 hours (12 hours +
25.75 hours) = 206.60 hours, reduced by 25 percent (10
percent + 15 percent) = 154.95 hours x $300/hour =
$46,485.00.

Ambinder:  37.00 hours minus 16.4 hours = 20.6 hours,
reduced by 25 percent (10 percent + 15 percent) = 15.45
hours x $350/hour = $5,407.50

Total = $51,892.50

C.  <u>Costs</u>

In addition to the foregoing fees, counsel also seek
the following costs:

| | |
|---|---|
| Expert Fee | $  2,000.00 |
| Duplicating Fee | $    961.59 |
| Copies | $    375.00 |
| Filing Fee | $    350.00 |
| Process Server | $    300.00 |
| UPS | $     41.25 |
| Westlaw | $    141.51 |
| TOTAL | $  4,169.35 |

(Additional Charges, annexed as Exhibit E to Melendez Decl.).[4]

Plaintiffs bear the burden of proving their reasonable
costs.  <u>Rotella v. Bd. of Educ.</u>, CV 01-0434 (NGG), 2002 WL 59106
at *5 (E.D.N.Y. Jan. 17, 2002); <u>Gonzalez v. Bratton</u>, 147 F. Supp.
2d 180, 211 (S.D.N.Y. 2001).  Defendants contend that plaintiffs'
expert fees, photocopies, UPS shipping costs and Westlaw costs

---

[4]The pages of Melendez's contemporaneous records are not
numbered, but the expert fee appears on the sixth page of her
records.  The other costs appear on Page 4 of the records from
Ambinder's firm.

should be denied because they are not contemplated by 28 U.S.C. § 1920 or this district's Local Civil Rules (Defs.' Mem. at 13-15).

Defendants argue that expert fees are not recoverable unless a party has sought prior approval by the court under Local Civil Rule 54.1(c)(3) and that such approval was not obtained here (Defs.' Mem. at 14-15).  Local Civil Rule 54.1(c)(3) provides that "[f]ees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained."  See also Ciraolo v. City of N.Y., 97 Civ. 8208 (RPP), 2000 WL 1521180 at *4 (S.D.N.Y. Oct. 13, 2000) (Patterson, D.J.) ($2,700 expert witness fee not recoverable where plaintiff did not show she sought prior approval from the court).

Plaintiffs claim that they told your Honor in a letter that an expert had been retained and was drafting a report (Reply Aff. at ¶ 17 and Ex. D).  Even if true, this correspondence does not constitute "prior court approval."  In their letter to the court, plaintiffs never even identified the expert by name. Because plaintiffs have not met their burden here, I recommend that the court decline to reimburse the $2,000 expert fee of Thomas Nodell.

40

Next, defendants contend that the $375 in costs associated with obtaining copies of New York City Transit Authority ("NYCTA") documents was for the convenience of counsel and is not, therefore, compensable under Local Civil Rule 54.1(c)(5) (Defs.' Mem. at 14).  The rule reads, "[a] copy of an exhibit is taxable if the original was not available and the copy was used or received in evidence.  The cost of copies used for the convenience of counsel or the court are not taxable."  Plaintiffs explain that they should be reimbursed for copying NYCTA documents because "it was necessitated by defendants['s] refusal to cooperate and provide all their prevailing wage contracts.  As such, plaintiffs were force[d] to look for alternative sources of information to help solidify plaintiffs['s] claim" (Reply Aff. at ¶ 16).  "[C]ompensable costs may arise . . . from the discovery necessary to identify alternative sources of information . . . ."  Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 78 (S.D.N.Y. 1991) (Francis, M.J.) (citation omitted); accord Phoenix Four, Inc. v. Strategic Res. Corp., 05 Civ. 4837 (HB), 2006 WL 1409413 at *9 (S.D.N.Y. May 23, 2006) (Baer, D.J.).  I credit plaintiffs' contention that they sought the copies for this purpose, and I recommend reimbursement for these costs.

Defendants cite two cases outside this Circuit for the proposition that plaintiffs' UPS shipping costs are not recoverable because they are not expressly covered by 28 U.S.C. § 1920 (Defs.' Mem. at 13, citing M.S. Distrib. Co. v. Web Records, Inc., No. 00 C 1436, 2003 WL 21788988 at *1 (N.D. Ill. July 31, 2003); and AM Props. v. Town of Chapel Hill, 202 F. Supp. 2d 451, 456 (M.D.N.C. 2002)).  However, courts within this Circuit have routinely taxed courier charges such as those sought here as reasonable costs.  Port Auth. Police Asian Jade Soc. of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J., 706 F. Supp. 2d 537, 542-43 (S.D.N.Y. 2010) (Cedarbaum, D.J.) (FedEx charges of $752.03 considered part of "reasonable out-of-pocket expenses incurred by the attorneys that are ordinarily charged to their clients" under Title VII (citations and internal quotation marks omitted)); Masino v. Columbus Const. Corp., 08-CV-1592 (RRM)(CLP), 2009 WL 2566956 at *8 (E.D.N.Y. Aug. 19, 2009) (adopting Report and Recommendation) (UPS fees part of "reasonable" costs under 29 U.S.C. § 1132(g)); Moran v. Sasso, 05-4716 (DRH)(ETB), 2009 WL 1940785 at *5-*6 (E.D.N.Y. July 2, 2009) (adopting Report and Recommendation in pertinent part) ($43.85 in UPS shipping costs considered "reasonable" where court finds that, in addition to costs defined under 28 U.S.C. § 1920, courts in this Circuit generally award an attorney's reasonable

out-of-pocket expenses that are normally chargeable to clients
(citation omitted)).  Because these expenses are properly
documented, I shall award these costs.

Defendants' argument that plaintiffs' Westlaw expenses
are not compensable as a matter of law is not persuasive.
"Whether to include the cost of electronic research . . . lies
within the discretion of this Court."  Kochisarli v. Tenoso,
02-CV-4320 (DRH)(MLO), 2007 WL 1017613 at *6 (E.D.N.Y. Mar. 30,
2007) (citation omitted); Capone v. Patchoque-Medford Union Free
Sch. Dist., 04-CV-2947 (JS)(MLO), 2011 WL 743573 at *5 (E.D.N.Y.
Feb. 23, 2011) (citation omitted).

> Courts in this Circuit previously interpreted United
> States ex rel. Evergreen Pipeline Construction Co. v.
> Merritt Meridian Construction Corp., 95 F.3d 153 (2d
> Cir. 1996), as holding that the expense of computerized
> legal research was not a taxable cost.  See, e.g., King
> v. JCS Enter., Inc., 325 F.Supp.2d 162, 171-72
> (E.D.N.Y. 2004); Cartier Int'l B.V. v. Gorski, 2003 WL
> 25739624, at *4-5 (D.Conn. Apr. 30, 2003); O'Grady v.
> Mohawk Finishing Products, Inc., 1999 WL 30988, at *7
> (N.D.N.Y. Jan. 15, 1999).  However, since the Second
> Circuit held in Arbor Hill that computerized legal
> research fees are recoverable if the attorney "normally
> bills its paying clients" for that cost, 369 F.3d at
> 98, courts have consistently permitted the recovery of
> legal research fees as a part of costs, see, e.g., J.S.
> Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL
> 4613752, at *18 (S.D.N.Y. Oct. 17, 2008); Cheesecake
> Factory Assets Co., 2008 WL 2510601, at *6; Wise v.
> Kelly, 2008 WL 482399, at *17 (S.D.N.Y. Feb. 21, 2008);
> Insinga v. Cooperatieve Centrale Raiffeisen
> Boerenleenbank B.A., 478 F.Supp.2d 508, 512-13
> (S.D.N.Y. 2007); Aiello v. Town of Brookhaven, 2005 WL
> 1397202, at *8 (E.D.N.Y. June 13, 2005).

<u>Cesario v. BNI Const., Inc.</u>, <u>supra</u>, 2008 WL 5210209 at *10 n.3.

In the exercise of my discretion, I conclude that research costs should be reimbursed here.  Plaintiffs submitted a dated, itemized invoice with the client name "American Chain" and the user name "Lloyd Ambinder" (Westlaw Invoice, Ex. E, attached to Melendez Decl.).  This documentation is sufficient.

Finally, defendants do not attack the duplicating fee, filing fee, or the fee for the process server, and I conclude that these costs are reasonable and the documentation is sufficient.  In total, I recommend that $2,169.35 in costs be awarded.

IV.  <u>Conclusion</u>

For all the foregoing reasons, I respectfully recommend that the Court award plaintiffs $51,892.50 in attorney's fees and $2,169.35 in costs, for a total of $54,061.85.

V.  <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court,

with courtesy copies delivered to the Chambers of the Honorable

George B. Daniels, United States District Judge, 500 Pearl

Street, Room 630, and to the Chambers of the undersigned, 500

Pearl Street, Room 750, New York, New York 10007.  Any requests

for an extension of time for filing objections must be directed

to Judge Daniels.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS

**WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE

REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States

v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        May 17, 2011

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Delvis Melendez, Esq.
Law Offices of Delvis Melendez, P.C.
90 Bradley Street
Brentwood, New York  11717


45

Lloyd R. Ambinder, Esq.
Virginia & Ambinder, LLP
111 Broadway
New York, New York  10006

Joseph M. Labuda, Esq.
Milman Labuda Law Group, PLLC
Suite 3W3
3000 Marcus Avenue
Lake Success, New York  11042