UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTOR CUSTODIO, EISTER DELGADO, and
JOSE BANEGAS, individually and on behalf of all          Case No.: 06-CV-7148(GBD)
other persons similarly situated who were employed
by AMERICAN CHAIN LINK & CONSTRUCTION,
INC. and/or any other entities affiliated with or
controlled by AMERICAN CHAIN LINK &
CONSTRUCTION, INC.

                            Plaintiffs,

                -against-

AMERICAN CHAIN LINK & CONSTRUCTION, INC.,
and any related corporate entities, MARY MURCHISON,
individually, RICHARD GUERCIA, individually,
COLONIAL SURETY CO., and NOVA CASUALTY CO.,
JOHN DOE PRIME CONTRACTORS 1 THROUGH 10,
and JOHN DOE BONDING COMPANIES 1 THROUGH 10

                            Defendants.

---

DEFENDANTS' OBJECTIONS TO MAGISTRATE'S
REPORT AND RECOMMENDATION CONCERNING PLAINTIFFS'
APPLICATION FOR COUNSEL FEES AND COSTS


                              MILMAN LABUDA LAW GROUP, PLLC
                              Joseph M. Labuda
                              Attorneys for Defendants
                              3000 Marcus Avenue, Suite 3W8
                              Lake Success, NY  11042
                              (516) 328-8899

**PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 72(b), Defendants hereby object to various portions of Magistrate Judge Pitman's Report and Recommendation dated May 17, 2011 which ordered that Plaintiffs be awarded $51,892.50 in attorneys' fees and $2,169.35 in costs, for a total award of $54,061.85.

**FACTS**

On October 20, 2008, the parties in this matter reached a settlement of Plaintiffs' claims at a conference with Magistrate Judge Eaton.  The parties then entered into a written Settlement Agreement in February 2009, which was filed under seal with the Court.  However, as the parties had not reached an agreement concerning Plaintiffs' attorneys' fees, Plaintiffs served their application for fees and costs.  On May 17, 2011, Magistrate Judge Pitman issued a Report and Recommendation that Plaintiffs be awarded $51,892.50 in attorneys' fees and $2,169.35 in costs, for a total award of $54,061.85.

**STANDARD OF REVIEW**

Rule 72(b) of the Federal Rules of Civil Procedure applies to a district court's review of a magistrate judge's finding and recommendation on a dispositive motion.  The reviewing court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

**ARGUMENT**

**THE REPORT AND RECOMMENDATION
SHOULD BE REJECTED AND MODIFIED ON MULTIPLE GROUNDS**

I.      <u>Plaintiffs Should Not Be Awarded Attorney's Fees For Time Spent On
        Breach of Contract Claims</u>

Plaintiffs seek to recover attorneys' fees for time spent on their breach of contract claim.  However, the law is settled that a plaintiff cannot recover attorney's fees on a breach of contract claim unless the contract expressly provides as such.  <u>See</u> <u>Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.</u>, 98 F.3d 13, 20-21 (2nd Cir. 1996), <i>citing</i> <u>Hooper Assocs. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989) ("Under New York law, the intent to provide for counsel fees as damages for breach of contract must be 'unmistakably clear in the language of the contract").  <u>See</u> also <u>Bourne Co. v. MPL Communications, Inc.</u>, 751 F. Supp. 55, 57-58 (S.D.N.Y. 1990) (contract did not contemplate attorney fee indemnification between parties where agreement to indemnify did not expressly mention indemnification for suits between the parties and claims covered by agreement were not exclusively or unequivocally claims between parties themselves); and <u>Flores v. Las Americas Communications, Inc.</u>, 218 A.D.2d 595, 595, 630 N.Y.S.2d 502, 502 (1st Dept. 1995) (memorandum decision), <i>leave to appeal dismissed in part and denied in part</i>, 87 N.Y.2d 1051 (1996) ("since the language of the parties' agreement did not clearly provide for the recovery of attorneys' fees, the court erred in awarding such fees to plaintiffs").  In this matter, there are no contracts that provide for counsel fees in the event of a breach.

Despite the above, Magistrate Judge Pitman erroneously determined that the hours submitted by Plaintiffs' attorneys concerning their breach of contract claim should be recovered.  Magistrate Judge Pitman also erroneously held that the breach of contract issue under New York state law was intertwined with the overtime claim under the FLSA

and involved a common core of fact and law.  However, in this matter the breach of contract claim and the FLSA overtime claim were <u>not</u> intertwined.  For the reasons set forth below this Court must reverse Judge Pitman's report and recommendation granting Plaintiffs attorney's fees for time spent on their breach of contract claim.

First, any calculation of overtime is separate and distinct from calculating damages under Plaintiffs' breach of contract claim.  Under the FLSA, an employee must be paid "not less than one and one-half times the regular rate at which" the employee is employed for each hour worked in excess of 40 per workweek."  29 U.S.C. § 207(a)(1). Overtime pay is based on the employee's <u>regular rate</u>- not the rate that the employee claims he should have been paid, but rather "the hourly rate <u>*actually*</u> <u>*paid*</u> *the employee for the normal, nonovertime workweek for which he is employed."*  29 CFR § 778.108 (emphasis added).  An employee who performed work on a public works project and maintained that he worked over 40 hours per week would look to his <u>actual</u> <u>pay</u> to determine his overtime rate of pay.  Under Plaintiffs' breach of contract claim, the issue is whether the Defendants breached the contract by classifying Plaintiffs in the proper trade and paying Plaintiffs in accordance with that trade.  This issue has nothing to do with an overtime claim.  As such, Plaintiffs' FLSA and breach of contract claims are not intertwined, as each claim is separate and distinct.

Second, Plaintiffs in fact conceded that their FLSA and breach of contract claims were separate and distinct.  At the September 12, 2008 telephone conference with Judge Eaton, Ms. Melendez, as counsel for Plaintiffs, maintained that plaintiff Victor Custodio essentially had overtime claims, while plaintiffs Eister Delgado and Jose Banegas essentially had breach of contract claims.  Magistrate Judge Pitman dismissed this fact by

stating that neither party has provided a transcript of the telephone conference with Judge Eaton.  While a transcript of the conference is not available (as no court reporter had been present), Plaintiffs did not dispute what Defendants had stated was Plaintiffs' position during the telephone conference or else Plaintiffs would have so indicated in their reply papers (which they have not).

Third, it would not be difficult for Plaintiffs to separate the work performed on Mr. Custodio's claim (FLSA claims), from that spent on Mr. Delgado's and Mr. Banegas's claims (breach of contract claims) since Mr. Custodio was a yard manager and Mr. Delgado and Mr. Banegas were field employees.  Moreover, Plaintiffs have the burden of establishing that they are entitled to fees and should have separated out the various claims on their bills.  See Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984).

Fourth, Magistrate Judge Pitman erroneously overlooked Defendants' argument that the notion that Plaintiffs may recover attorney's fees for a non-FLSA claim simply because it is intertwined with the FLSA claim has been dismissed by courts as a violation of the "American rule".  The "American rule" was first articulated by the U.S. Supreme Court in Alyeska Pipeline Service Company v. Wilderness Society, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975), which provides that each party in an action bear its own attorneys' fees, absent statutory authorization to the contrary.  In Smith v. Bonds, 1993 U.S. Dist. LEXIS 21326 at *17 (E.D.N.C. September 28, 1993)[1], the plaintiffs requested attorneys' fees for their FLSA claim as well as a claim arising under the Migrant and Seasonal Agricultural Workers Protection Act, 29 U.S.C. §§ 1801-72 ("MAWPA"), which does not provide for attorneys' fees.  The Smith court held that

---

[1] It should be noted that this case specifically disagreed with the holding in Diaz v. Robert Ruiz, Inc., 808 F.2d 427 (5th Cir. 1987), one of the cases cited by Plaintiffs in support of recovery of attorneys' fees on non-FLSA claims.

"[b]ecause MAWPA does not expressly provide for attorney's fees, allowing a plaintiff to 'bootstrap' attorney's fees for this claim to a FLSA claim would not be in accordance with the American rule."  Smith, 1993 U.S. Dist. LEXIS at *20.  As such, Plaintiffs in the instant matter are attempting to improperly "bootstrap" the prevailing wage claim onto the FLSA claim.  See also Frenel v. Freezeland Orchard Company, 1988 WL 58061, *7 (E.D.Va. April 8, 1988) (No. 871-12781-1A) (allowing counsel for plaintiff to submit attorney's fees for FLSA claim but directing them to exclude fees for services performed on MAWPA claim).  In fact, neither Plaintiffs nor Magistrate Judge Pitman cited any case holding that a court may award attorneys' fees on a breach of contract claim for unpaid differential prevailing wages.[2]

Finally, if Plaintiffs insist that they cannot separate the work performed in furtherance of each Plaintiff's claim, then Defendants respectfully request that the Court order a two-thirds (2/3) reduction of all attorneys' fees, on the basis that two (2) out of the three (3) Plaintiffs- Mr. Delgado and Mr. Banegas- only had a breach of contract claim that does not provide for attorneys' fees.

As such, the Court must reverse the report and recommendation of Magistrate Judge Pitman and disallow attorney's fees for time spent on their breach of contract prevailing wage claim.

II.    Plaintiffs Should Not Be Awarded Attorneys' Fees As They Are Responsible For The Protracted Litigation

Magistrate Judge Pitman also declined to recommend a denial of all of Plaintiffs'

---

[2] The case cited by Magistrate Judge Pitman in his report and recommendation, Sobczak v. AWL Indus., Inc., 540 F. Supp.2d 354 (E.D.N.Y. 2007), only addressed whether plaintiffs' overtime pay should be calculated as one and a half times the minimum wage or one and a half times the prevailing wage. However, this case did not hold that FLSA claims were intertwined with breach of contract claims for purposes of recovery of attorney's fees.  Moreover, to the extent that the court in Sobczak held that the overtime rate of pay is based on what an employee should have earned (and not what he actually earned), Defendants respectfully disagree.

fees, or even a reduction, due to Plaintiffs unnecessarily prolonging the litigation in this matter.    However, this determination in Magistrate Judge Pitman's report and recommendation should be rejected and the Court should deny Plaintiffs all attorneys' fees.

On April 4, 2007, Ambinder and Melendez met with Defendants' counsel to discuss settlement of this matter.  Defendants offered to settle the class of the three (3) Plaintiffs for $100,000.00, inclusive of attorneys' fees and costs.  This settlement offer was rejected out-of-hand by Plaintiffs.

Magistrate Judge Pitman erroneously held that the settlement offer was a proposed settlement for the <u>entire</u> <u>class</u>.  In fact, the proposed settlement was only for Victor Custodio, Eister Delgado and Jose Banegas- the <u>named</u> <u>three (3)</u> <u>plaintiffs</u>.  <u>See</u> Affirmation of Richard I. Milman in Opposition to Plaintiffs' Motion for Attorneys' Fees dated March 27, 2009, ¶ 3 ("After Defendants conducted an internal audit of its books and records, they concluded that a settlement of $100,000.00, inclusive of attorneys' fees and costs, would more than satisfy any claims that *Plaintiffs* had against Defendants"). This clearly supports Defendants' position that the settlement offer was for the named Plaintiffs and not on any class wide basis since there was no class at that time nor was there ever a class certified in this case.  In fact, Plaintiffs only moved for class action certification on <u>May 29, 2007</u> (Docket No. 21) and Your Honor specifically denied Plaintiffs' motion on March 18, 2008 (Docket No. 35).

Moreover, a class settlement cannot be approved unless the following elements are established:

1.   That the settlement has been arrived at by arm's-length bargaining;

7

2. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently;

3. That the proponents of the settlement are counsel experienced in similar litigation; and

4. That the number of objectors or interests they represent is not large when compared to the class as a whole.

4 Newberg on Class Actions § 11.41, at 92-93. "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ...[, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." Martens v. Smith Barney, Inc., 181 F.R.D. 243, 263 (S.D.N.Y. 1998) quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). In this matter, Defendants did not (and could not) have offered to settle for the entire class, as no class was certified (in fact, no class in this matter was ever certified) and no discovery on a class-wide basis had been conducted by the parties. As such, Defendants could not have offered to settle on behalf of a non-existent class.

Up to the time of the April 4, 2007 settlement conference, Mr. Ambinder's firm had billed $7,952.75 (even at inflated hours) and Ms. Melendez had billed $11,850.00 (even at excessively inflated hours). Moreover, the parties eventually settled this matter in October 2008 for a total of $62,500.00. This totals $82,302.75. Obviously, this is significantly less than the $100,000.00 originally offered by Defendants to settle this matter in April 2007.

As such, Plaintiffs needlessly prolonged the litigation in this matter when they could have accepted Defendants' generous settlement offer of $100,000.00 on April 4, 2007. Plaintiffs' attorneys' fees needlessly continued to increase, as did Defendants' attorneys' fees, and Plaintiffs' actions needlessly wasted judicial resources in dealing with a case that should have been settled. Plaintiffs' attorneys should not be rewarded for

8

rejecting a more generous settlement offer on April 4, 2007 and the Court should cut off Plaintiffs' attorney's fees as of April 4, 2007.

Based on the above, the Court should deny Plaintiffs all attorney's fees after April 4, 2007 in this matter.  See Sahyers v. Prugh, Holliday & Karatinos, P.L., No. 08-10848 (M.D.Fla. March 3, 2009)(affirming denial of all Plaintiff's attorneys' fees and costs in an FLSA case, due to holding that Plaintiff sought significant money damages without offering proof of the amount actually owed by Defendants and Plaintiff wasted the judiciary's significant time and resources on unnecessary litigation).  At the very least, the Court should reduce Plaintiffs' attorney's fees due to Plaintiffs' protraction of litigation. See Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("unreasonably prolonging a legitimate suit is a reason to reduce fees").

Moreover, based on the above, this Court should reverse Magistrate Judge Pitman's report and recommendation declining to deny or reduce Plaintiffs' attorneys fees due to Plaintiffs' failure to provide Defendants with their Rule 26(a)(1) Initial Disclosures ("Initial Disclosures"), despite numerous requests from Defendants.  The purpose of initial disclosures is to provide the parties "with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." (Emphasis added).  Sender v. Mann, 225 F.R.D. 645, 650 (D. Colo. 2004); City & County of San Francisco v. Tutor-Saliba Corp., 218 F.R.D. 219 (N.D. Cal. 2003)(one of the purposes of purpose of  initial disclosures is to "make an informed decision about settlement"); Hesco Parts, LLC v. Ford Motor Co., 2007 U.S. Dist. LEXIS 61397 (W.D. Ky. Aug. 17, 2007)(holding initial disclosures must provide assessment of damages "in sufficient detail so as to inform the defendants of the contours of their potential

exposure.")  Had Defendants timely received Plaintiffs' Initial Disclosures, this case likely would have settled much sooner, as Defendants would have been able to fully analyze the basis of Plaintiffs' claims.  Instead, Plaintiffs refused to provide the Initial Disclosures and prolonged the litigation in this matter.

Finally, Magistrate Judge Pitman failed to take into account that Plaintiffs' expert provided erroneous damages calculations, which was one of the reasons why settlement of this matter was unnecessarily delayed.

As such, the Court should reverse Magistrate Judge Pitman's report and recommendation declining to deny or even reduce Plaintiffs' attorneys' fees because Plaintiffs unnecessarily prolonged the litigation in this matter, including failing to produce their Initial Disclosures and providing erroneous damage calculations.

III.    The Hourly Rates For Plaintiffs' Counsel Are Not Reasonable.

Magistrate Judge Pitman found that the following hourly rates for Plaintiffs' counsel were reasonable: $300.00 per hour for Delvis Melendez ("Melendez") and $350.00 per hour for Lloyd Ambinder ("Ambinder").   However, Magistrate Judge Pitman's determination should be rejected.  As set forth below, the rates of $300 per hour for Melendez and $350 per hour for Ambinder are excessive.

"[T]he burden is on the fee applicant to produce satisfactory evidence--in addition to the attorneys' own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984). The relevant "community" is "the district in which the court sits," Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (internal citations omitted).   To determine the

reasonable hourly rate for Plaintiffs' counsel, the Court must look to the market rates currently "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2nd Cir. 1998) (internal quotations omitted).

It is clear by Plaintiffs' counsel's handling of the case that they do not warrant a high hourly fee.  As noted above, Plaintiffs needlessly prolonged the litigation in this matter when they could have accepted Defendants' generous settlement offer in April 2007.  The result was not only that Plaintiffs' attorneys' fees needlessly continue to increase, but so did Defendants' attorneys' fees.  Moreover, Plaintiffs' actions needlessly wasted judicial resources in dealing with a case that should have been settled. This type of litigation mismanagement and poor judgment is not reflective of an experienced attorney and the rates for Plaintiffs' counsel should be adjusted downward to $200 per hour for Melendez, and $250 per hour for Ambinder.

Moreover, while the relevant community is the Southern District of New York (the district in which this case was brought), this Court has recognized that the "size of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable attorney's fee, largely because of overhead costs." Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005).  See also, e.g., Chambless v. Masters. Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2nd Cir. 1989) (holding that the size of an attorney's firm is relevant in determining the relevant community's "prevailing market rates" and that "smaller firms may be subject to their own prevailing market rate"), cert. denied, 496 U.S. 905 (1990); Smith v. Wettenstin, No. 02 Civ.5806 (MHD), 2003 WL 22966281, at *3 (S.D.N.Y. Dec. 16, 2003) ("As a single practitioner, [plaintiff's

attorney] does not face the overhead of the larger firms and hence his compensation is - all other things being equal - appropriately set at a lower rate."); Raniola v. Bratton, No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *6n. (S.D.N.Y. Apr. 21, 2003) ("The size of the firm is deemed to be pertinent [in calculating a reasonable hourly rate] because larger law firms are assumed to carry a larger overhead, thus necessitating a higher hourly rate."); Algie v. RCA Cilohal, Inc., 891 F. Supp. 875, 895 (S.D.N.Y. 1994) ("[I]f the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm, since such firms typically charge more per hour to cover a higher overhead."), aff'd, 60 F.3d 956 (2d Cir. 1995).

Accordingly, in Tlacoapa, a 2005 decision under the FLSA, this Court found billing rates of $375 per hour for an attorney with 20 years or experience and $300 per hour for an attorney with nine years of experience, both in a three-attorney firm, to be "unreasonably high." Id, 386 F. Supp. 2d at 369.  (Emphasis added.)  Instead, this Court held that reasonable rates for these attorneys were $250 per hour and $200 per hour, respectively.  Id. at 370; see also Gordon v. Camp Canine, Inc., No. 02 Civ. 4093 (SAS) (JCF), 2003 WL1563288, at *3 (S.D.N.Y. Mar. 25, 2003) (setting a $200 hourly rate in FLSA case for attorney with five years of experience at a small law firm); Sugarman v. Village of Chester, 213 F. Supp. 2d 304, 310 (S.D.N.Y. 2002) (awarding $240/hour to the senior partner with nine years' experience and $215 to the junior partner with 6 years' experience, noting that such an hourly rate is "consistent with recent awards granted attorneys with similar experience in the relevant geographic area") (citing cases). Other decisions in the Southern District make clear that an hourly rate of $350 is reserved for

highly experienced attorneys who have been practicing law for well over 25 years. See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters'' Union. Local 10, 749 F.2d 1000, 1008 (2d Cir. 1984) (noting experience and reputation of attorney admitted to practice for 27 years); Nam Yang, 2006 WL 435720, at *3 (hourly rate of $350 for "highly experienced civil rights attorney" who had been practicing law for 37 years).

In the instant matter, Melendez acknowledged that she has over 10 years of experience and she is a solo practitioner.  Ambinder is a partner in a small law firm of only 11 attorneys (see firm website: http://www.vandallp.com/Attorneys/).  Based on the above cited decisions, a rate of no more than $250/hour for Ambinder, and $200/hour for Melendez, is fair.

Accordingly, Magistrate Judge Pitman's determination that Plaintiffs' counsel's hourly rates were reasonable must be reversed.  Based on the case law precedent outlined above, Defendants submit that Melendez should be compensated at a rate of no more than $200/hour, and Ambinder at $250/hour.  Accordingly, the Court should reduce Plaintiffs' fees by $17,040.00.

IV.    Plaintiffs Should Not Be Awarded Attorney's Fees Due To Engaging In Harassment And Improper, Shoddy And Dilatory Litigation Practices

Magistrate Judge Pitman declined to recommend a reduction of Plaintiffs' attorney's fees, due to Plaintiffs harassing American Chain Link employees throughout the litigation in this matter and for improperly soliciting employees to join this action. However, Magistrate Judge Pitman's report and recommendation should be rejected, as Plaintiffs' attorney's fees must be reduced for these reasons.

Plaintiffs have engaged in harassment and improper, shoddy and dilatory litigation practices, which should reduce an award of attorneys' fees to Plaintiffs in this

matter.   See, eg., Jankey v. Poop Deck, 537 F.3d 1122, 1132 (9th Cir. 2008) ("unreasonably prolonging a legitimate suit is a reason to reduce fees").

First, Plaintiffs had improperly engaged in harassment throughout the course of this action.  Ms. Melendez told employees of American Chain Link and other individuals that Mr. Guercia's business was struggling and that he would not be able to pay them. This had resulted in numerous telephone calls to Mr. Guercia's office inquiring as to the status of American Chain Link's business, and concerns that payroll would not be made. Magistrate Judge Pitman declined to reduce attorney's fees on this matter because the parties disagreed concerning the facts.  However, Magistrate Judge Pitman has apparently overlooked the fact that Defendants had offered evidence to the Court- the August 13, 2008 affidavit of Rafael Abrego- for their position that Plaintiffs told employees that American Chain Link was struggling and would not be able to pay them.

Second, this Court has already been apprised on two (2) separate occasions as to Plaintiffs' improper attempts to solicit employees to join this action as party plaintiffs.  In July 2007, Defendants moved for a preliminary injunction against Plaintiffs and submitted an affidavit from Lundy Hemmings, a former American Chain Link employee, stating that he was contacted several times by Ms. Melendez, urging him (without success) to join the instant lawsuit against American Chain Link.  At a hearing on July 27, 2007 concerning the prior motion, this Court admonished Ms. Melendez concerning her solicitation of Mr. Hemmings (and possibly other American Chain Link employees). This Court told Defendants to inform the Court should Ms. Melendez engage in further solicitation.  As such, the Court should not reward Plaintiffs' improper behavior with an award of attorneys' fees for time spent in responding to this motion (Ms. Melendez

claims to have spent over nine (9) hours of billable time, or over $2,700.00, in connection with this motion), as Plaintiffs' solicitations were the reason why this motion was filed in the first place.  Again, Plaintiffs' counsel cannot be rewarded for her malfeasance.

In August 2008, Ms. Melendez *again* engaged in improper solicitation of American Chain Link employees as potential plaintiffs in this action.  Defendants submitted an affidavit from Rafael Abrego, an American Chain Link employee, detailing how Ms. Melendez encouraged Mr. Abrego to join this action by falsely stating that American Chain Link was going out of business, and by falsely stating that she could get Mr. Abrego thousands of dollars right away.  Shortly after Mr. Abrego was improperly joined to the lawsuit,[3] he changed his mind and sought to be removed from the action. Mr. Abrego had to repeat to Ms. Melendez his request to be removed from the lawsuit several times.  Ms. Melendez purportedly wrote a release for Mr. Abrego, which she failed to file until Defendants had brought this matter to the Court's attention.  Ms. Melendez also told Mr. Abrego to speak to plaintiff Jose Banegas about the lawsuit. Further, in clear violation of this Court's order, Ms. Melendez told Mr. Abrego to call his cousin about joining the lawsuit and bringing more people into the lawsuit as plaintiffs. As such, the Court should not reward Plaintiffs' improper behavior with an award of attorneys' fees for time spent in responding to this motion (Ms. Melendez claims to have spent thirty-six (36) hours of billable time, or $10,800.00, in connection with this motion), as Plaintiffs' solicitations were the reason why this motion was filed in the first

---

[3] It should be noted that Plaintiffs' attempt at joinder of Mr. Abrego was prima facie invalid, as the cover letter to the consent to joinder form notes that this is a form for use in a federal collective action ("Notice of Filing of Consent to Joinder Pursuant to 29 U.S.C. 216(b)") when no such collective action has ever been certified by the Court in this matter.  See also FRCP Rule 15.  Furthermore, Plaintiffs did not even attempt to join Mr. Abrego to this action by any motion to amend the complaint to add a party which would have been the correct procedural process to join Mr. Abrego to the instant case.  Plaintiffs should not recover any fees for time spent on any matter pertaining to Mr. Abrego.

place (and the amount of time spent on this motion is in any event clearly excessive). Magistrate Judge Pitman determined that Plaintiffs' attorney's fees should not be reduced because Plaintiffs were never sanctioned or disqualified by the Court.  However, the whole reason why Defendants were compelled to move for sanctions and to move to disqualify Plaintiffs was due to Plaintiffs' malfeasance.  Plaintiffs should not be rewarded on this basis by the Court in fees.

As such, the Court should reverse Magistrate Judge Pitman's report and recommendation declining to reduce Plaintiffs' attorneys' fees because Plaintiffs harassed American Chain Link employees throughout the litigation in this matter and for improperly soliciting employees to join this action.

V.    Plaintiffs Should Not Be Awarded Attorney's Fees For Time Spent On Unsuccessful Claims

Magistrate Judge Pitman's Report and Recommendation properly found that any time spent by Mr. Ambinder or Ms. Melendez for unsuccessful claims are not recoverable.  "As the Supreme Court has noted, 'no fee may be awarded for services on the unsuccessful claim.'"  Kirsch v. Fleet Street, Ltd., 1996 U.S. Dist. LEXIS 17808 at *12-13 (S.D.N.Y. December 4, 1996), citing Hensley v. Eckerhart, 461 U.S. 424, 435, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983).  However, Magistrate Judge Pitman erred in omitting from his assessment an amount of time which, for the same reason, should also have been reduced from Plaintiffs' attorney's fees.  As such, his omission in this regard must be reversed.

With regard to Plaintiffs' unsuccessful motion to compel discovery, Magistrate Judge Pitman erroneously omits reduction of fees for time spent on Plaintiffs' motion to compel depositions.  On July 11, 2008, Ms. Melendez claims to have billed 1.5 hours for

a letter to Defendants (which was eleven (11) lines long) threatening to seek Court intervention on the issue of depositions.  Moreover, Plaintiffs allegedly spent 8 hours on July 12, 2008 drafting the letter motion to compel depositions.

As such, because this motion to compel depositions was also unsuccessful, the Court must reduce Plaintiffs' attorney's fees by $2,850.00 for this time as well.

VI.      The Court Should Eliminate Any Double Billing

Magistrate Judge Pitman declined to reduce Plaintiffs' attorney's fees for time spent by both Ms. Melendez and Mr. Ambinder.  However, the Court should reverse the report and recommendation and eliminate all double billing.

Magistrate Judge Pitman erred in holding that Plaintiffs should recover attorney's fees for duplicate time spent by Mr. Ambinder and Ms. Melendez.  See Ware v. ABB Air Preheater, Inc., 1995 U.S. Dist. LEXIS 14159 at *23 (W.D.N.Y. Sept. 28, 1995)(reducing billing entries for attorney time which was duplicative of other attorneys' time and involved "getting up to speed").  Moreover, while Magistrate Judge Pitman only noted four entries where both Mr. Ambinder and Ms. Melendez submitted time on the same day, there are other days where they also clearly performed duplicate work.  For example, on May 17, 2007, Ms. Melendez billed 3.5 hours for drafting affidavits for the motion for class certification and meeting with clients.  On May 24, 2007, Mr. Ambinder billed 5.3 hours for, among other things, drafting affidavits for the motion for class certification.  This is absolute duplicate billing which must be eliminated.

As such, the Court must reverse the report and recommendation of Magistrate Judge Pitman and reduce any double billing by $2,700.00.

VII.     The Court Should Apply An Across The Board Reduction Of Thirty-Five Percent (35%) For Vague And Excessive Entries

17

Magistrate Judge Pitman determined that Plaintiffs' attorney's fees must be reduced by a total of twenty-five percent (25%); ten percent (10%) for excessive billing, and another fifteen percent (15) for block billing and/or vague time entries.   While Defendants agree that a reduction of fees is warranted for these reasons, the reduction should be higher- in the total amount of <u>thirty-five (35%) percent</u>.

Magistrate Judge Pitman had already noted that Plaintiffs' billing is both excessive and vague.   For example, Mr. Ambinder's office, who has brought many prior actions for recovery of unpaid overtime and prevailing wage claims, maintains that it took them 7.5 hours to draft a form complaint.   Ms. Melendez maintains that it took her 5.3 hours to draft responses to Defendants' <u>seven (7)</u> interrogatories (nearly one hour per interrogatory!).   Moreover, Ms. Melendez's time records often lack a basic description of the nature of the work that she performed.   For example, Ms. Melendez maintains that on August 15, 2007, she spent 8 hours' work, including for "research", but she does not even indicate what she researched.

"Although the Court does not require that a fee applicant's records be extraordinarily detailed, the records must identify 'the general subject matter of [the claimed] time expenditures.'"  <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 1988 U.S. Dist. LEXIS 7486, at *16 (S.D.N.Y. July 21, 1988).   The Southern District has frequently made reductions to awards for attorneys' fees when presented with vague or incomplete billing records.   <u>See</u>, <u>e.g.</u>, <u>Rahman v. Smith & Wollensky Rest. Group, Inc.</u>, 2008 U.S. Dist. LEXIS 34425 (S.D.N.Y. April 29, 2008) (applying 33% reduction where time entries reflected "excessive billing or duplicative work"); <u>DeVito v. Hempstead China Shop., Inc.</u>, 831 F. Supp 1037, 1045 (S.D.N.Y. 1993) (40% reduction for

duplicative entries, insufficient descriptions of work done); <u>Ragin v. Harry Macklowe Real Estate Co.</u>, 870 F. Supp. 510, 520-521 (S.D.N.Y. 1994) (30% reduction for numerous entries with insufficient descriptions, duplicative billing errors, and errors throughout the record). As such, this Court should reverse Magistrate Judge Pitman's report and recommendation and deduct attorneys' fees by <u>35%</u> to account for all excessive, vague or incomplete time entries.

Moreover, Magistrate Judge Pitman erred in not further reducing Plaintiffs' attorney's fees due to the fact that Defendants made a good faith attempt to eliminate some of the confusion concerning Ms. Melendez's time entries, to no avail. On March 19, 2009, Defendants sent to Ms. Melendez a letter requesting a copy of all non-privileged documents (including emails) that were drafted and produced in the course of, and in connection with, this action, and for which Plaintiffs seek to recover attorneys' fees (excluding any document previously served on Defendants). Ms. Melendez responded by <u>not providing a single document</u>, incredibly maintaining that "My computer was recently replaced. As such much of the old information on the hard is not on the new computer. The old one caught fire." Defendants submit that Ms. Melendez's "my dog ate my homework" response is inexcusable. Ms. Melendez appeared to have the information needed to draft Plaintiffs' application for fees. Moreover, Ms. Melendez should have made a hard copy of the documents requested by Defendants.

Magistrate Judge Pitman did not find this a basis for reducing Plaintiffs' attorney's fees, holding that Plaintiff's responsibility was to submit proper time records and documentation to the Court, and not to an opposing party. However, Plaintiffs' actions here are clearly another example of Plaintiffs' tendency throughout this litigation

to engage in dilatory and shoddy practices.  As such, the Court should reverse Magistrate Judge Pitman's report and recommendation and disallow any and all attorneys' fees in connection with time entries by Plaintiffs, for which Defendants had requested documentation.  Accordingly, the Court should reduce Plaintiffs' fees by $6,919.00.

VIII.   Plaintiffs' Attorney's Fees Must Be Reduced Due to Plaintiffs' Limited Success

Magistrate Judge Pitman declined to recommend a reduction of Plaintiffs' attorney's fees due to "proportionality"- i.e. the fact that Plaintiffs achieved limited success in this case.  However, the Court should reverse the report and recommendation and reduce Plaintiffs' attorney's fees due to their limited success in this action.

Plaintiffs' overall lack of success justifies a substantial downward departure from the initial lodestar amount, and this Court should exercise its discretion to adjust the calculated lodestar amount accordingly. "An attorney is not automatically entitled to the lodestar amount as the 'reasonable' attorney's fee." Peacock v. Schwartz, 154 F. Supp. 2d 428 430 (E.D.N.Y. 2001). It is well-established that "the most critical factor in determining [whether to reduce the lodestar amount] is the degree of success obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992). [4]  Where, as here, a plaintiff has achieved

_____

[4] In determining the compensation to be awarded to a prevailing plaintiff where there has been only a partial success, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Henslev. 461 U.S. at 436-437; see also Separ v. Nassau County Dep't of Soc.Servs., 327 F. Supp. 2d 187, 190-191 (E.D.N.Y. 2004) (holding that when determining the proper reduction, the court can attempt to identify and subtract those hours spent litigating the unsuccessful claims, or it can simply reduce the award to account for the limited success). Accordingly, should the Court decide not to subtract the hours spent in litigating Plaintiff's unsuccessful claims of overtime as a driver and unlawful retaliatory discharge under the FLSA, his failed motion for summary judgment, his failed opposition to Defendant's motion concerning lack of service of Complaint on Brian Kelly, and his failed motions in limine, the Court should apply a downward adjustment to the lodestar amount because of the limited degree of success achieved by Plaintiff.

only partial or limited success, a lodestar that includes all hours expended on the litigation as a whole <u>may yield an excessive amount</u>.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436 (1983); <u>Murphy v. Lynn</u>, 118 F.3d 938, 952 (2d Cir. 1997) (downward adjustments to the lodestar figure may be made to account for such items as unnecessary or unproductive services).   This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." <u>Hensley</u>, 461 U.S. at 436.

In evaluating a plaintiff's level of success, this Court is obligated to consider the amount of damages awarded in comparison to the amount sought by Plaintiff, and "[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." <u>Henslev</u>, 461 U.S. at 440 (noting that plaintiffs were awarded less than half of the compensatory damages originally sought); <u>Sparkman v. Zwicker & Assoc., P.C.</u>, No. 04 CV 1143 (NG) (KAM), 2006 WL 463939, at *2 (E.D.N.Y. Feb. 27, 2006) (concluding "that a <u>75 percent reduction</u> in the amount of hours expended all legal work is appropriate" where although plaintiff was successful on her claims for statutory damages, <u>no relief  was granted to the putative class</u>, and where counsel duplicated work from earlier filed lawsuits) (emphasis added); <u>Betancourt v. Giuliani</u>, 325 F. Supp. 2d 330, 334-35 (S.D.N.Y. 2004) (reducing award by <u>90%</u> in civil rights class action where the lawsuit's only success was a settlement with <u>one plaintiff</u>); <u>Scanlon v. Kessler</u>, No. 97 CIV. 1140 (CBM). 1998 WL 726047, at *4 (S.D.N.Y. Oct. 14, 1998) (reducing plaintiff's lodestar figure by a percentage to account for plaintiff's limited success).

Here, there is no question that Plaintiffs achieved only limited success.   The Complaint, brought by three (3) individuals, alleged a class action/collective action on behalf of similarly situated individuals.  Plaintiffs moved for and were denied class action certification.  No other individuals joined this action (except Rafael Abrego, who shortly thereafter requested to be removed from the case).  Moreover, Plaintiffs recovered in settlement only a total of $62,500.00 on their claims without actually proving that they were entitled to the claims.  Therefore, Plaintiffs achieved limited success in this case. Accordingly, the Court should reduce the fees award to be more proportional. Lewis v. Hurst Orthodontics, PA, 292 F. Supp. 2d 908 (D. Tex. 2003) (fees in FLSA case reduced to be more proportional to the success obtained).

Similarly, an across-the-board percentage cut in the number of hours claimed and/or in the lodestar amount is warranted because the amount of Plaintiffs' settlement recovery ($62,500.00) is grossly disproportionate to the amount sought in attorney's fees ($106,335.75).  "Although the amount of attorney's fees awarded may exceed the amount of damages ultimately recovered by the plaintiff, the court must consider the amount of damages awarded in evaluating the reasonableness of a claim for attorneys' fees." Levy v. Powell, No. CV-OO-4499(SJF), 2005 WL 1719972, at *6 (E.D.N.Y. July 22, 2005) (emphasis added); see also Morris v. Eversley, 343 F. Supp. 2d 234, 246 (S.D.N.Y. 2004) (recognizing that the degree of monetary success (or lack thereof) is a factor that must be considered).

Accordingly, this Court should reverse the report and recommendation and reduce the excessive and unreasonable fee sought by Plaintiffs in light of the disproportionately low amount of damages Plaintiffs recovered, as compared to the fees their attorneys seek to obtain.

IX.      Plaintiffs Should Be Disallowed Recovery Of Costs

Magistrate Judge Pitman erred in allowing Plaintiffs recovery of costs for obtaining copies of New York City Transit Authority ("NYCTA") documents. As such, the Court must reverse the report and recommendation for these costs.

Mr. Ambinder's office requested recovery of $375.00 for costs associated with obtaining copies of NYCTA documents. However, Local Rule 54.1(c)(5) provides that "The Cost of copies used for the convenience of counsel or the court are not taxable." S.D.N.Y. Civ. R. 54.1(c)(5). In this matter, Plaintiffs have failed to show that the costs for these records were not for the convenience of counsel. While Magistrate Judge Pitman erroneously credited Plaintiffs' account that Defendants refused to cooperate and provide prevailing wage contracts, the Court should reject Plaintiffs' contention and deny recovery for these costs.[5]

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that the Court reject the portions of the report and recommendation discussed above in connection with Plaintiffs' fee application and for such other and further relief as the Court deems just and proper.

Dated: Lake Success, New York       MILMAN LABUDA LAW GROUP, PLLC
   June 17, 2011

           **/s/**_____
           Joseph M. Labuda, Esq.
           Netanel Newberger, Esq.
           Attorneys for Defendants
           3000 Marcus Avenue, Suite 3W8
           Lake Success, NY  11042
           (516) 328-8899

---

[5] Interestingly, Magistrate Judge Pitman credits Plaintiffs with their account that Defendants refused to provide prevailing wage contracts but rejects Defendants' evidence that Plaintiffs were harassing and soliciting employees.